UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| KAREN AHLSCHLAGER and DONALD AHLSCHLAGER,<br><br>Plaintiffs,<br><br>v.<br><br>BRAGA FRESH FAMILY FARMS, INC., d/b/a Josie's Organics; and HY-VEE, INC., an Iowa Corporation,<br><br>Defendants. | 4:22-cv-04159-KES<br><br><br>ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION |

Pending before the court is defendant, Braga Fresh Family Farms, Inc.'s, motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Dockets 8, 9. Plaintiffs, Karen and Donald Ahlschlager, resist Braga's motion. Docket 12.

**FACTUAL BACKGROUND**

The court takes all well-pleaded facts by the plaintiffs as true, views the evidence in the light most favorable to the plaintiffs, and resolves all factual conflicts in the plaintiffs' favor. *See Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014).

This case arises out of an *E. coli* infection that Karen Ahlschlager alleges she contracted from eating Braga's Josie's Organics-brand spinach purchased from a Hy-Vee grocery store in Sioux Falls, South Dakota. Docket 1 ¶¶ 1, 63. Hy-Vee is a "regional" grocery chain. *Id.* ¶ 8. Prior to her infection, Karen would "typically each a spinach salad daily for lunch." *Id.* ¶ 60. She "routinely"

purchased Braga's Josie's Organics-brand spinach, primarily from Hy-Vee. *Id.* ¶ 62. Karen ate Braga's ready-to-eat baby spinach from October 18, 2021, to October 22, 2021, after purchasing the spinach at a Hy-Vee store in Sioux Falls. *Id.* ¶¶ 63, 67. On October 24, 2021, she began experiencing fatigue and diffuse stomach cramping. *Id.* ¶ 80. She was ultimately diagnosed with an *E. coli* infection that led to severe illness, including hospitalization and kidney damage, among other aftereffects. *Id.* ¶¶ 80-106. According to Ahlschlagers, Karen's *E. coli* infection was a precise DNA match with other *E. coli*-infected "Josie's Organics" baby spinach products. *Id.* ¶ 78. The Ahlschlagers sued Braga and Hy-Vee, alleging a manufacturing defect, failure to warn, negligence, negligence per se, and loss of consortium. *Id.* at 19-28.

The spinach that Karen bought from Hy-Vee bears the Josie's Organics label and other associated branding. *See id.* ¶¶ 66, 73. Braga, which is incorporated in and has its principal place of business in California, claims that "Hy-Vee did not purchase the spinach at issue from Braga, [but] instead, the purchase was made by Topco Associates, LLC, a Delaware corporation headquartered in Illinois, who in turn sold the spinach to Hy-Vee." Docket 9 at 2; Docket 1 ¶ 5; *see* Docket 7 ¶ 20. All Topco's shipments to Hy-Vee in 2021 were shipped to Hy-Vee's distribution center in Iowa. Docket 7 ¶ 20.

According to Braga's Human Resources Director, Braga is not licensed to do business in South Dakota, does not possess a South Dakota sales or tax license, has not previously been a party to a lawsuit in South Dakota, has no subsidiaries in contact with South Dakota, has no employees or officers

2

residing in South Dakota, has no bank accounts, property, or loans in South Dakota or with a South Dakota entity, has not held any meetings or conducted other business in South Dakota, and does not produce or advertise any products specifically directed towards South Dakota residents. Docket 7 ¶¶ 4-16. Braga has never made a sale directly to any person or entity in South Dakota. *Id.* ¶ 19.

Braga maintains a Josie's Organics brand website with a store locator page. *See* Docket 1 ¶ 40. When a user enters a geographic location into this page, the page shows the nearest store locations from which the user can purchase "Josie's Organics" products. *See id.* Shortly before Ahlschlagers filed their complaint,[1] entering "Sioux Falls, South Dakota, United States" into the store locator page on Braga's website would direct the user to a Sam's Club in Sioux Falls as the nearest location. *Id.*

### DISCUSSION

### I. Legal Standards

### A. Standard of Review

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead 'sufficient facts to support a reasonable inference that the defendant[] can be subjected to jurisdiction within the state.' " *Creative Calling*

---

[1] The court evaluates personal jurisdiction based on whether minimum contacts existed when plaintiffs filed their complaint or earlier, using the so-called "chronological rule." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 562 (8th Cir. 2003) ("Minimum contacts must exist either at the time the cause of action arose, the time the suit is filed, or within a reasonable period of time immediately prior to the filing of the lawsuit." (quoting *Clune v. Alimak AB*, 233 F.3d 538, 544 n.8 (8th Cir. 2000))).

*Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (alteration in original) (quoting *K – V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011)). Without personal jurisdiction, the court lacks authority over a defendant. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999) ("[J]urisdiction generally must precede merits in dispositional order[.]"). The plaintiff bears the burden to prove the court has personal jurisdiction. *Fastpath*, 760 F.3d at 820. But "[t]he [plaintiff's] evidentiary showing required at [the motion to dismiss] stage is minimal[.]" *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (quoting *Willnerd v. First Nat'l Neb., Inc.*, 558 F.3d 770, 778 (8th Cir. 2009)); *see also Select Comfort Corp. v. Innovation Ads, Inc.*, 2011 WL 31715, at *3 (D. Minn. Jan. 5, 2011) ("While the plaintiff eventually bears the burden to establish personal jurisdiction by preponderance of the evidence, when personal jurisdiction is decided based upon affidavits, prior to an evidentiary hearing, the plaintiff need only establish a prima facie showing of personal jurisdiction."). The court must view the evidence in the light most favorable to the plaintiffs and resolve factual conflicts in the plaintiffs' favor. *Fastpath*, 760 F.3d at 820.

### B. Stream of Commerce Analysis

"A federal court may assume jurisdiction over a defendant in a diversity action if the forum State's long-arm statute permits the exercise of personal jurisdiction and that exercise is consistent with the Due Process Clause of the Fourteenth Amendment." *Creative Calling Sols.*, 799 F.3d at 979. South Dakota's long-arm statute confers jurisdiction over "[t]he commission of any act

4

which results in accrual within this state of a tort action" to the fullest extent allowed by the Due Process Clause, and thus the court need only determine whether the assertion of personal jurisdiction comports with due process under the Fourteenth Amendment. *See* S.D.C.L. § 15-7-2(2), (14); *see also Larson Mfg. Co. of S.D. v. Conn. Greenstar, Inc.*, 929 F. Supp. 2d 924, 926 (D.S.D. 2013) (citing *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)).

The Due Process Clause of the Fourteenth Amendment prohibits a state from exercising personal jurisdiction over a nonresident defendant unless that defendant has "minimum contacts" with the state such that maintaining the lawsuit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation omitted). These contacts with the forum state must be "such that [the defendant] should reasonably anticipate being haled into court there." *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Eighth Circuit uses five factors to determine whether the exercise of personal jurisdiction accords with due process: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) [South Dakota]'s interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 911 (8th Cir. 2012). The first three factors carry significant weight, while the final two are of secondary importance. *See Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1074 (8th Cir. 2004). Courts should not mechanically apply the test

because this determination "is not readily amenable to rigid rules that can be applied across the entire spectrum of cases." *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co. KG*, 646 F.3d 589, 596 (8th Cir. 2011) (quoting *Anderson v. Dassault Aviation*, 361 F.3d 449, 452 (8th Cir. 2004).

Here, plaintiffs argue that the court may exercise personal jurisdiction on the "stream of commerce" theory. Docket 12 at 7. In product liability cases, the "stream of commerce" approach to personal jurisdiction has divided the Supreme Court. *Compare Worldwide Volkswagen*, 444 U.S. 286 *with Asahi Metal Indus. Co. v. Sup. Ct. of Calif.*, 480 U.S. 102 (1987). In *Worldwide Volkswagen*, a Supreme Court majority held that placing goods into the stream of commerce "with the expectation that they will be purchased by consumers in the forum State" may indicate purposeful availment of that state, and thus allow for personal jurisdiction. 444 U.S. at 298.

In subsequent cases, the Supreme Court has issued fractured opinions on the application of the stream of commerce theory. In *Asahi Metal Indus.*, 480 U.S. 102, a plurality of the Court found that merely placing an item into the stream of commerce, without more, "is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112. "Additional conduct" is necessary to "indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State[.]" *Id.* Four other justices disagreed that something more was required, stating that if a manufacturer "is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *See*

6

*id.* at 117 (Brennan, J, concurring in part). The court fractured again in *J. McIntyre Machinery Ltd. v. Nicastro*, 564 U.S. 873 (2011), where a plurality of the Court explained that "[t]he principal inquiry . . . is whether the defendant's activities manifest an intention to submit to the power of a sovereign." *Id.* at 882.

In the Eighth Circuit, the stream of commerce analysis does not replace the five-factor test, but instead is "an overlay through which the five factors, or constitutional due process, may be viewed." *Estate of Moore v. Carroll*, 159 F. Supp. 3d 1002, 1012-13 (D.S.D. 2016) (collecting Eighth Circuit cases). Cases from the Eighth Circuit echo the various formulations of the stream of commerce theory from the Supreme Court. *See, e.g., Stanton v. St. Jude Med., Inc.*, 340 F.3d 690, 694 (8th Cir. 2003) ("Personal jurisdiction may be found where a seller uses a distribution network to deliver its products into the stream of commerce with the expectation that the products will be purchased by consumers of the forum state."); *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 948 (8th Cir. 1998) (explaining there are insufficient minimum contacts for "a manufacturer whose product ends up in the forum State on an attenuated, random, or fortuitous basis" (internal quotation omitted)); *Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 376 (8th Cir. 1990) ("[P]lacement of a product into the stream of commerce, without more, does not constitute an act of the defendant purposefully directed towards the forum State.").

The Eighth Circuit has also "recognize[d] a variant of 'stream-of-commerce' jurisdiction over a foreign manufacturer that pours its products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area." *Viasystem*, 646 F.3d at 597 (internal quotation omitted). This is known as the *Barone* variant. *See Barone v Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610 (8th Cir. 1994).

Barone was injured in Nebraska by fireworks manufactured by a Japanese company that his employer had purchased from a South Dakota distributor. *See id.* at 610-11. The Japanese manufacturer had no office or agent in Nebraska, never advertised in Nebraska, and did not sell its products directly in Nebraska. *Id.* at 611. But the Japanese manufacturer did sell its products to regional distributors in six states, including South Dakota. *Id.* The South Dakota distributor sold fireworks via a catalog and had a regional salesperson in Nebraska. *Id.* Thus, the manufacturer's selection of the South Dakota distributor was "evidence of [the manufacturer's] efforts to place its products in the stream of commerce throughout the Midwest and other parts of the country as well." *Id.* at 614. The Eighth Circuit emphasized, however, that a defendant's contacts still had to be more than "attenuated, random, or fortuitous." *Id.* at 615. Thus, "had someone purchased [the fireworks] from [the distributor] and taken those fireworks to a state that was outside of [the distributor's] and [the manufacturer's] distribution scheme where the fireworks then caused injury to a third party[,]" then jurisdiction may well have been improper. *Id.*

8

In subsequent applications of *Barone*, the manufacturer putting its logo and other identifying decals on the product and shipping its product to a distributor in a nearby state have weighed in favor of finding that the manufacturer purposefully availed itself of the forum state. *See Vandelune*, 148 F.3d at 948; *Clune v. Alimak AB*, 233 F.3d 538, 543-44 n.8 (8th Cir. 2000). In contrast, the Eighth Circuit generally does not apply *Barone* where the manufacturer merely supplies a component part to a customer, which the customer incorporates into a product that the customer then distributes, because there the manufacturer is not using the customer to distribute to a larger market; the customer is the manufacturer's targeted market. *See Stanton*, 340 F.3d at 694.

## II.     Braga Has Purposely Availed Itself of South Dakota

Braga argues that the court cannot exercise personal jurisdiction over it because Braga has not purposefully availed itself of South Dakota. Docket 9 at 7-8 (citing *Asahi Metal Indus.*, 480 U.S. at 112). But the court finds that Braga has purposely availed itself of South Dakota under the *Barone* variant. Unlike in *Asahi Metal Indus.*, Braga made a completed product—the packaged spinach—not a component part that was later incorporated into a larger product that caused the harm. *See* 480 U.S. at 105-06; Docket 1 ¶ 48. Like the manufacturer in *Barone*, Braga has established a distribution network for this completed product. *See* Docket 1 ¶ 6. It provides the spinach to its distributors, like Topco, not just with the foreseeability or knowledge that its products will be sold throughout its distributors' networks, but for this exact purpose.

9

*Barone*, 25 F.3d at 613 ("[A] seller [at the head of a distribution network] surely has purposely chosen to sell generally to buyers in the forum state and reaps the economic benefit of doing so." (quoting *Giotis v. Apollo of the Ozarks, Inc.*, 800 F.2d 660, 667 (7th Cir. 1986)); *Asahi Metal Indus.*, 480 U.S. at 112 ("Additional conduct . . . may indicate an intent or purpose to serve the market in the forum State.") Topco is not Braga's target market; the target market is the wider pool of customers accessed through Topco. *See Stanton*, 340 F.3d at 693-94. Braga is "reap[ing] the benefits of its network of distributors, and it is only reasonable and just that it should now be held accountable in the forum of the plaintiff's choice[.]" *Barone*, 25 F.3d at 615.

The court also finds relevant Braga's choice of Topco as a distributor. Topco is headquartered in Illinois and does business with Hy-Vee, a "regional" grocery chain, which received all its 2021 Josie's Organics shipments at its distribution center in Iowa. *See* Docket 1 ¶ 8; Docket 9 at 2; *Barone,* 25 F.3d at 613 (South Dakota distributor was "conveniently located within short distance of three other states," including forum state of Nebraska); *Vandelune*, 148 F.3d at 948 (providing product to distributor in nearby state weighs in favor of personal jurisdiction). Likewise, the inclusion of the Josie's Organics logo and branding on the spinach container also weighs in favor of personal jurisdiction. *See* Docket 1 ¶¶ 42, 47; *Vandelune,* 148 F.3d at 948; *Clune*, 233 F.3d at 543-44.

This is not like the "attenuated, random, or fortuitous" contacts *Barone* cautioned against finding sufficient for personal jurisdiction. *See* 25 F.3d at

615. There is no middleman that purchased the spinach from Topco and then took it outside of Topco's distribution area, where Karen Ahlschlager purchased it. *See id.*; Docket 1 ¶¶ 8, 63; Docket 9 at 2. And the presence of Josie's Organics spinach at Hy-Vee was not a "single isolated sale" which the Supreme Court has held to be insufficient for personal jurisdiction, even alongside other sales efforts. *See Nicastro*, 564 U.S. at 888 (Breyer, J., concurring); Docket 1 ¶ 40. Karen alleges that she "typically [ate] a spinach salad daily for lunch[,]" that she "routinely" purchased the Josie's Organic brand spinach, and that the "main store" at which she bought this spinach was at Hy-Vee, including at Sioux Falls store locations. Docket 1 ¶¶ 60-65. From these allegations, the court can reasonably infer that Karen bought Josie's Organics-brand spinach from a Hy-Vee located in Sioux Falls on many occasions.

Finally, Braga directed its activities at South Dakota through the store locator page on the Josie's Organics website. Docket 1 ¶ 40. This page served as a type of advertising for Braga. *See Asahi Metal Indus.*, 480 U.S. at 113 ("Additional conduct . . . may indicate an intent or purpose to serve the market in the forum State, for example, . . . advertising in the forum State . . . ."). Braga argues that a party cannot be subjected to personal jurisdiction "everywhere in [the] world where its website can be accessed." Docket 21 at 10. But the store locator page was not merely a static advertisement available for all to view online; it invited the user to enter their location to locate the nearest store at which the user could find Josie's Organics brand products. Docket 1 ¶ 40; *Cf. Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D.

11

Pa. 1997) ("[I]nteractive [web]sites where a user can exchange information with the host computer" for commercial purposes can establish personal jurisdiction). Users who entered Sioux Falls as their location were not directed to contact Topco for more information. Docket 1 ¶ 40. They were directed by Braga to a particular Sioux Falls store to purchase Braga's products. *Id.*

From the above discussion of Braga's contacts with South Dakota, the court concludes that the first two factors applied in the Eighth Circuit weigh in favor of exercising personal jurisdiction over Braga. *See Myers*, 689 F.3d at 911. The third factor, "the relationship of those contacts with the cause of action[,]" also weighs in favor of exercising personal jurisdiction. *Id.* This requirement is "flexible" based on the totality of circumstances. *See id.* at 913*; K–V Pharm.*, 648 F.3d at 592-93. Braga's distribution network was set up to get its spinach into the hands of consumers like Karen, and its store locator was designed to do the same. *See* Docket 1 ¶ 40. The Store Locator's identification of a Sam's Club store instead of the Hy-Vee location where Karen purchased her spinach does not change this determination. *See id.*; *Downing v. Goldman Phipps, PLLC*, 764 F.3d 906, 913 (8th Cir. 2014) ("[P]roximate causation between the contacts and the cause of action is not required.").

The court also considers the fourth and fifth factors. The fourth factor requires the court to consider South Dakota's interest in providing a forum for its residents, and the fifth factor requires the court to consider the convenience or inconvenience to the parties. *See Myers*, 689 F.3d at 911. The fourth factor cuts in favor of personal jurisdiction because South Dakota has a legitimate

12

interest in providing a forum for its residents to litigate their tort claims. *See Burger King Cor. V. Rudzewicz*, 471 U.S. 462, 473 (1985) ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."). The fifth factor also supports personal jurisdiction because Ahlschlagers are South Dakota residents. *Myers*, 689 F.3d at 911; Docket 1 ¶ 4. Although Braga is not a "resident" of South Dakota, it nonetheless directed its products into a distribution network that included South Dakota. *See* Docket 1 ¶ 40; Docket 9 at 2. The court finds it is not overly burdensome for Braga to litigate here.

## CONCLUSION

For the foregoing reasons, the court finds that it may exercise personal jurisdiction over Braga, and it is

ORDERED that Braga's motion to dismiss (Docket 8) for lack of personal jurisdiction is denied.

Dated August 9, 2023

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE